AO 106 (Rev. 7/87) Affidavit for Search Warrant ⚜

# United States District Court
### SOUTHERN   DISTRICT   OF   CALIFORNIA

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be searched)
The stored memory, active digital display and all other electronic features of one Motorola cellular telephone, model number H65XAN6RR4DN, black in color, and bearing serial number 364VHSCT3S.



FILED
JUN 17 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

'08 MJ 1865

CASE NUMBER: ELS080100270

I ____Victor Vega_____ being duly sworn depose and say:

I am a(n) __United States Border Patrol Agent with Customs and Border Protection__ and have reason to believe
          Official Title

that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)
The stored memory, active digital display and all other electronic features of one Motorola cellular telephone, model number H65XAN6RR4DN, black in color and bearing serial number 364VHSCT3S which was removed as evidence from the person and vehicle of XU JUN LEE incident to his arrest on January 29, 2008. The aforementioned phone is currently in possession of U.S. Border Patrol and Customs Enforcement (CBP), Border Patrol Agent in San Diego, California Evidence Vault.

in the _____Southern_____ District of _____California_____

there is now concealed a certain person or property, namely (describe the person or property to be seized)

See Attachment A, herein incorporated by reference,

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)
property and information that constitutes evidence of the commission of a criminal offense, contraband, the fruits of crime, instrumentalities of crime, and things otherwise criminally possessed and property designed and intended for use and which is and has been used as the means for committing a criminal offense against the United States,

concerning a violation of Title ____8____ United States code, Section(s) __1324_____.
The facts to support a finding of Probable Cause are as follows:

See Attached Affidavit

Continued on the attached sheet and made a part hereof.   ☒ Yes   ☐ No

Signature of Affiant
**Victor Vega Border Patrol Agent**
U.S. Border Patrol and Customs Enforcement

Sworn to before me, and subscribed in my presence

__6-16-08_____ at  __San Diego, California__
Date                                       City and State

**NITA L. STORMES
U.S. MAGISTRATE JUDGE**
Name and Title of Judicial Officer                 Signature of Judicial Officer

AFFIDAVIT

I, Victor Vega, being duly sworn, hereby depose and say:

A.   EXPERIENCE AND TRAINING

1.   I am a Border Patrol Agent of the United States Department of Homeland Security, Customs and Border Protection (formerly known as the U.S. Immigration and Naturalization Service). I have been a U.S. Border Patrol Agent since 1996. I am assigned to the Calexico, California Border Patrol Station. I conduct immigration investigations and Title 21 investigations, as such I am cross-designated by the U.S. Drug Enforcement Administration (DEA) to conduct narcotic investigations and enforce the provisions of the Federal Controlled Substance Act, otherwise known as Title 21, of the United States Code. Since May 2007, I have been assigned to the San Diego AUSA Office, in San Diego, California.

2.   As a Border Patrol Agent, I have initiated and executed numerous arrests for Immigration related offenses. I have also participated in numerous alien smuggling arrests and I have participated in the execution of numerous search warrants relating to alien smuggling.

3.   As a Border Patrol Agent, I have received specific training in the area of alien smuggling investigations. I have had training and experience in the methods used by alien smugglers. In the course of my duties, I have worked as a surveillance agent observing and recording movements of individuals involved in alien smuggling. I have interviewed defendants, witnesses and informants related to alien smuggling.

4.   As a Border Patrol Agent, I have received training and conferred with other agents and investigators in the operation of cellular and digital telephones and other electronic devices used by alien smugglers in the course of their illicit activities. During the course of alien smuggling

1

investigations, I have learned that alien smugglers and other persons involved in alien smuggling conspiracies utilize digital and cellular telephones, in part, to increase their communicative abilities, by providing the smugglers with instant access to telephone calls and voice messaging. Alien smugglers also use digital and cellular telephones, in part, due of their belief that law enforcement personnel are unable to simultaneously track the originating and destination telephone numbers or station identifiers of calls being placed to and from their digital and cellular telephones.

5.   In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of alien smuggling investigations, and these officers are in concurrence with this Border Patrol Agent as to the necessity of this affidavit and search warrant request. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

   B.   LOCATION TO BE SEARCHED

6.   There is reason to believe that probable cause exists to search the stored memory, active digital display and all other electronic features of the following cellular telephones. Found during the search of Xu Jun Lee or Cheong Sau Wong and their respective vehicles.

   a. Motorola cellular telephone, model number H65XAH6RR4DN, Serial # 364VHSCT3S, black in color;

   b. Motorola cellular telephone, Model number H65XAN6RR4DN, Serial #364VHSD15C, black in color;

   c. Sanyo cellular telephone, model number Katana II, Serial # A000000516C226 78, black and grey in color;

2

   d. Samsung cellular telephone, model number SCH-A930, Serial number 02816357220, black in color;

   e. Motorola cellular telephone model number H65XAN6RR4DN, Serial # 364VHSD08B, black in color;

   f. UTSTARCOM cellular telephone, model number CDM9200, serial number 7330127632, grey in color;

which were removed as evidence from XU JUN LEE or Cheong Sau Wong incident to their arrest for violation of 8 USC 1324, Transportation of Illegal Aliens. The specified telephones are currently in possession of U.S. Border Patrol and Customs and Border Protection, AUSA Liaison Border Patrol Agent in San Diego, California evidence vault.

   C.   ITEMS TO BE SEIZED

7.   Based upon my experience and training, and all of the facts and opinions set forth in this affidavit, I believe that the following items will be found in the locations to be searched described in paragraph 6, supra: the telephone number and/or name and identity assigned to the telephone; telephone numbers, and/or names and identities stored in the directory; telephone numbers for any incoming and outgoing calls; telephone numbers stored in the telephone's memory; and any other electronic information in the stored memory and/or accessed by the telephone (including, but not limited to, text messages and voice messages); which evidences the existence of a conspiracy to Transport illegal aliens.

   D.   STATEMENT OF FACTS

8.   On January 29, 2008, at approximately 4:30 p.m., Bureau of Land Management ("BLM") Law Enforcement Rangers Cox, Nieblas and Kent, were on patrol on BLM lands, on County Road S-2, near the San Diego and Imperial County line. The rangers observed two vehicles

traveling in tandem driving north on S-2. The vehicles were traveling very closely together at a high rate of speed for the road conditions. County Road S-2 has many elevation changes, curves, and blind spots. The front vehicle was a white 2004 GMC cargo van with California license plate #7H22487, the rear vehicle was a 2008 Mercury Mountaineer SUV with California license plate #6CEK721.

    E.  <u>SUV Traffic Stop</u>

9. Ranger Kent left his stationary position in his marked BLM law enforcement vehicle, and Rangers Cox and Nieblas left their stationary position in their BLM law enforcement vehicle, and began following the SUV and van. Due to the vehicles' high rate of speed, the rangers traveled several miles before catching up with the vehicles. When Ranger Kent was able to catch up to the vehicles, he observed the SUV pass the van on a blind curve. Ranger Kent observed the SUV cross the solid double yellow lines, overtake the van and continue driving. When conditions were safe, Ranger Kent passed the van, and as he approached the SUV, it pulled to the side of the road, onto the shoulder, before Ranger Kent activated his emergency lights and sirens. Ranger Kent pulled in behind the SUV, activated his emergency lights, and requested a records check on the license plate. The dispatcher informed Ranger Kent that the vehicle was a rental vehicle. Ranger Kent then approached the vehicle on the driver's side and asked the driver, and sole occupant of the vehicle, Xu Jun Lee (Xu Jun Lee), for his driver's license and insurance information. Xu Jun Lee provided his California driver's license and a rental contract from Budget Rent A Car in Yuma, Arizona. Ranger Kent asked Xu Jun Lee where he was coming from and Xu Jun Lee replied that he was coming from Yuma, Arizona. Ranger Kent asked Xu Jun Lee where he was going, and he replied that he was going to Julian, to visit his uncle. Ranger Kent asked if he knows where his uncle lives in Julian, and Xu Jun Lee

responded that he does not know. When asked if he lives in Yuma, Xu Jun Lee responded that he lives in San Jose.

10.    Ranger Kent returned to his service vehicle to inform dispatch of his status. When Ranger Kent returned to the vehicle, he asked Xu Jun Lee if he knew the person driving the van. Xu Jun Lee responded that it was his uncle. Ranger Kent again asked Xu Jun Lee why he was going to Julian, and Xu Jun Lee responded that he was helping his uncle move from Yuma to Julian. Ranger Kent asked Xu Jun Lee why he passed his uncle in such a dangerous way, and Xu Jun Lee responded that his uncle was driving to slow. Ranger Kent observed that Xu Jun Lee had trembling hands, and appeared to be nervous while answering questions. Ranger Kent also observed a camouflage two-way radio and a cell-phone on the passenger floorboard. Ranger Kent then escorted Xu Jun Lee from the location where Xu Jun Lee pulled over, to the location of the white van, which had been pulled over by Rangers Nieblas and Cox. Upon arriving at the location of the white van, Ranger Kent observed that Rangers Nieblas and Cox were removing persons from the white van. Ranger Kent also observed that individuals were inside a wooden box in the back of the van. Ranger Kent conducted a pat down of Xu Jun Lee for officer safety and handcuffed Xu Jun Lee. During the patdown, Ranger Kent discovered a large bundle of one hundred dollar bills in the front pants pocket of Xu Jun Lee. Ranger Kent discovered several bundles of U.S. currency in a bag on the front passenger seat of the SUV. The total amount of currency found on the person of Xu Jun Lee was $1,200.00. The total amount of currency in the bag was $11,300.00. Ranger Kent asked Xu Jun Lee who owned the money and Xu Jun Lee replied that some was his and some was not. Ranger Kent issued a state citation to Xu Jun Lee for false statement, unsafe passing and crossing the double yellow lines.

F.   <u>Cargo Van Traffic Stop</u>

11.   Law Enforcement Rangers Nieblas and Cox left their stationary position in a marked BLM law enforcement vehicle and began following the SUV and van. Upon reaching the position of the cargo van, Ranger Nieblas observed the SUV pass the van. After the SUV passed the cargo van, Ranger Nieblas observed that the cargo van was swerving toward the fog line. Ranger Nieblas initiated a traffic stop by activating his emergency lights and siren. Ranger Nieblas approached the vehicle on the passenger side, and Ranger Cox approached on the driver's side. Ranger Nieblas ordered Cheong Sau Wong, to turn off the vehicle. Ranger Nieblas observed that the entire passenger area of the van was filled with furniture and a computer. Ranger Nieblas also observed that Cheong Sau Wong appeared to be nervous, his whole body was shaking and his arms were flinging all over the steering wheel.

Ranger Nieblas asked Cheong Sau Wong if there were any other occupants in the vehicle, and Cheong Sau Wong responded that there were not. Ranger Nieblas asked what was in the back of the van and Cheong Sau Wong responded that he had a computer in the back. Ranger Nieblas asked Cheong Sau Wong for permission to search the vehicle and Cheong Sau Wong consented. Ranger Nieblas also asked Cheong Sau Wong if he was traveling with the SUV and he replied that he was not. Ranger Nieblas communicated with Ranger Kent and was informed of the statement by Xu Jun Lee that he was traveling with Cheong Sau Wong.

12.   While searching the back of the cargo van, Ranger Nieblas heard movement in the back of the vehicle. While Ranger Cox continued to search the vehicle, Ranger Nieblas again asked Cheong Sau Wong if there were people inside the van and he replied no. Ranger Nieblas asked Cheong Sau Wong where he lived. Cheong Sau Wong replied that he lives in Yuma. Cheong

Sau Wong further stated that he was coming from Yuma and that he was going to Julian. Cheong Sau Wong denied knowing the driver of the SUV. During the vehicle search, the Rangers found a wooden box. Ranger Neiblas shined a flashlight through the crack in the box and determined that people were hidden inside the box, but they could not exit the box because a sofa was resting on top of the box, and two washers secured tightly by the rear doors blocked the rear of the box. The sofa was removed and Ranger Cox broke open the wooden box. Ranger Nieblas observed four males and one female crammed inside the box.

13.    All the individuals in the wooden box were barefoot, soaked in sweat. The female appeared to by unconscious, and it took several loud orders to get her to respond. There was no food or water inside the box. Ranger Nieblas found a receipt for the purchase of the vehicle for $10,000.00 cash inside the passenger door panel. Ranger Cox found a camouflage two-way radio matching the radio in the SUV, and two cell phones in the driver's area of the cargo van. Rangers also found Chinese and Korean currency in the vehicle. Ranger Nieblas cited Cheong Sau Wong for providing false information, people riding in the vehicle where not designated, and no proof of insurance. Ranger Nieblas contacted United States Border Patrol and Border Patrol Agent Eduardo Vasquez and Samuel Morales responded to the scene. Border Patrol Agents then transported the Defendants and the material witnesses to the El Centro Border Patrol Station for processing.

14.    Incident to the arrest, Ranger Kent also searched the Mercury Mountaineer. During the search Ranger Kent found a dark colored bag containing $9,300.00 dollars in U.S. currency. After finding the money Ranger Kent asked Lee who the money belonged to and Lee responded by saying that some of the money belonged to him and some did not. Ranger Kent also searched

Lee and found that Lee had another $2,000.00 dollars in $100.00 dollar bills, all in U.S. currency. Agent Kent also discovered the following cell phones during the search of the vehicles.

    a. Motorola cellular telephone, model number H65XAH6RR4DN, Serial # 364VHSCT3S, black in color.

    b. Motorola cellular telephone, Model number H65XAN6RR4DN, Serial #364VHSD15C, black in color.

    c. Sanyo cellular telephone, model number Katana II, Serial # A000000516C226 78, black and grey in color.

    d. Samsung cellular telephone, model number SCH-A930, Serial number 02816357220, black in color.

    e. Motorola cellular telephone model number H65XAN6RR4DN, Serial # 364VHSD08B, black in color.

    f. UTSTARCOM cellular telephone, model number CDM9200, serial number 7330127632, grey in color.

Material Witness Interview

15. Each of the five material witnesses were interviewed by ICE Agents with the help of a Mandarin Interpreter. During the individual interviews it was determined that each material witness was a citizen and national of the Peoples Republic of China with no proper immigration documents that would allow them to work or reside in the United States legally. At the time of their entry none of the material witnesses possessed proper documents to enter or reside in the United States.

  G.  <u>Material Witness Depositions</u>

16. The five material witnesses were deposed and each stated they were from Fujian Province in the Peoples Republic of China. They all stated they flew from China to Cuba, and from Cuba to Mexico. They stated that once in Mexico they traveled from their initial point of entry, through Mexico to a house where they were met by Cheong Sau Wong and Xu Jun Lee. The material witnesses then stated Cheong Sau Wong transported them into the United States through what appeared to be a checkpoint. After crossing the checkpoint Cheong Sau Wong then told them they were in the United States. After entering the United States Cheong Sau Wong took them to another house in the United States where Xu Jun Lee met them.

17. On April 10, 2008 a Federal Grand Jury for the Southern District of California returned a fifteen count superseding indictment charging Cheong Sau Wong and Xu Jun Lee with Bringing in Illegal Aliens for Private Financial Gain in violation of 8 USC §1324 (a) (2) (B) (ii), and transportation of illegal aliens in violation of 8 USC §1324.

18. Based upon my experience and investigation in this case, I believe that Xu Jun Lee and Cheong Sau Wong as well as other persons as yet unknown, have been involved in an on-going conspiracy to smuggle aliens in the United States. Likewise, I also believe that Xu Jun Lee, Cheong Sau Wong, and others have used telephones to coordinate, direct, and further this conspiracy during their travels into and out of the United States, and during their residence and travels within the United States, and have in fact used telephones to facilitate alien smuggling in the United States.

F.  CONCLUSIONS

19.  Based upon my experience and training, consultation with other agents in alien smuggling investigations, consultation with other sources of information, and the facts set forth herein, I know that the items to be seized set forth supra in Section C are likely to be found in the location to be searched described supra in Section B.

_____
Victor Vega
Senior Border Patrol Agent
U.S. Border Patrol and Customs Enforcement
SUBSCRIBED TO AND SWORN TO
before me this _16_ day of June 3, 2008.

_____
NITA L. STORMES
UNITED STATES MAGISTRATE JUDGE